VEDDER *v.* DAVIS *et al.*

(*Supreme Court, General Term, Fourth Department.* July, 1888.)

LANDLORD AND TENANT—CONTRACT—CONSTRUCTION.

An agreement for the occupation of land, after stipulating that the first parties, who were owners of the land, should furnish all the hay the stock might require till spring came, and that at the expiration of the year the second party should leave enough hay to maintain the stock till spring, provided that "the hay and straw is to be considered as belonging to first parties from the beginning to the end of the year; but it is to be regulated as above described." It then provided that "if there is any surplus of feed upon the farm it is to be considered as belonging to the first parties." *Held,* that the words, "to be regulated as above described," relate to the manner and purpose for which the hay was to be used, and that the second party had no right to any surplus of hay.

Appeal from Herkimer county court.

Action by John J. Vedder against John P. Davis and Robert L. Davis to recover a surplus of hay left on premises of defendant at the close of his occupancy thereof. Judgment for plaintiff, and defendants appeal.

Argued before HARDIN, P. J., and FOLLETT and MARTIN, JJ.

*C. J. Palmer*, for appellants. *H. Clay Hall*, for respondent.

HARDIN, P. J. Defendants were the owners of a farm in the town of Manheim, which carried a dairy of about 30 cows, and they let the plaintiff have the same on the conditions named in an instrument signed by the parties. The instrument is not a lease, but it is an agreement for the occupation upon certain terms specified therein. The agreement is quite similar to the one which fell under construction in *Wilber* v. *Sisson*, 53 Barb. 258, affirmed, 54 N. Y. 121. The following language relates to the question made in the court below, viz.: "It is also understood that, when second party comes into possession, first party is to furnish all the hay the stock may require, by the second party drawing from where first party may direct, if not enough on the farm to keep the stock until grass comes, and to keep the team until the spring's work is done. It is also understood that when the year expires the second party is to

leave enough hay to maintain the stock until grass comes, and a team until the spring's work is done, or, if there is not enough, the first party is to furnish it, and second party is to pay two dollars per ton for it. The hay and straw is to be considered as belonging to first party from the beginning to the end of the year; but it is to be regulated as above described. * * * If there is any surplus of feed upon the farm it is to be considered as belonging to first party." By the stipulation entered into by the parties it appears "there was thirty-five tons of surplus hay on the premises at the termination of plaintiff's occupancy." For that 35 tons of hay the learned county judge holds that the plaintiff is entitled to recover. We have carefully read the instrument executed by the parties, and we find no express language therein which confers the title to the hay grown upon the farm upon the plaintiff. For the labor which the plaintiff was to do he was to receive precisely what was stipulated in the instrument executed by him. Inasmuch as there is no stipulation conferring the title to the grass or hay growing upon the farm, he had no title to it. It seems the parties contemplated by the language which they used in the instrument that "the hay and straw is to be considered as belonging to first party from the beginning to the end of the year."

Following the language which we have just quoted, are words which are referred to by the learned county judge as, in his opinion, suggestive of the idea that the plaintiff was to have some interest in the hay and straw. The words are, "But it is to be regulated as above described." If we turn back to the language of the instrument we find that the first parties, defendants, are to furnish "all the grass-seed, and second party is to sow it;" and it was also provided that when the second party entered into possession the first parties were "to furnish all the hay the stock may require by second party drawing from where first party may direct." In this language we find the clear indication that if there was a shortage of hay the second party was to do the drawing and he was also to allow enough to be drawn onto the farm "to keep the stock until grass comes, and to keep the team until the spring's work is done." It was also provided that at the expiration of the year he was to leave hay enough "to maintain the stock until grass comes, and the team until the spring's work is done." The further contingency was provided for that, in the event he did not leave such quantity, the first parties were to furnish it, "and second party was to pay $2.00 per ton for it." Apparently this two dollars per ton to be paid was about equivalent to what it would cost to harvest the hay, had sufficient been grown upon the farm to answer the purposes of the agreement. Whatever doubt might otherwise arise from the consideration of the language used in the contract between the parties, we think the words, "the hay and straw is to be considered as belonging to first party from beginning to the end of the year," evince a clear intent to exclude the second party from any interest in the hay and straw. The words, "to be regulated as above described," relate to the manner and purpose for which the hay was to be used. The parties, in the later language used by them in the instrument, seem to carry forward the idea that the owners of the land were to have any surplus of hay, straw, or products of the land not specifically named as belonging to the second party by way of compensation, for they say, viz.: "If there is any surplus of feed upon the farm, it is to be considered as belonging to first party." The word "considered," as used in that connection, seems to be equivalent to a declaration that the ownership should be that of the first parties. Similar use was made of the word "considered" in declaring that the hay and straw belong to the parties of the first part. Our interpretation of the agreement leads to the conclusion that the plaintiff had no ownership in the hay left upon the farm at the completion of the term of his occupancy; therefore was not entitled to recover two dollars per ton therefor, or any other sum. If the foregoing interpretation of the contract is correct,

it follows that the learned county judge was in error in determining that the plaintiff was entitled to recover anything by reason of any hay that remained over at the close of the occupation of the plaintiff. If these views are correct it follows that the decision and judgment of the county court should be reversed, and a new trial ordered, with costs to abide the event.

FOLLETT and MARTIN, JJ., concur.